UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION
FEDERAL CASE NO.

# 09-23182

IN ADMIRALTY

## CIV-MOORE

MAGISTRATE JUDGE
SIMONTON

BLUE WATER MARINE SERVICES, INC.,
d/b/a TOWBOAT U.S. SOUTH DADE, a
Florida Corporation,

       Plaintiff-Respondent,

vs.

ALL UNDERWRITERS SUBSCRIBING TO
COVER NOTE JY416008X, including
SANTAM INSURANCE COMPANY
LIMITED, and SAGICOR GENERAL
INSURANCE (COMPANY) LTD.,

       Defendants-Petitioners.
----------------------------------------------------------/

```
FILED by ___AJS___ D.C.
INTAKE
        OCT 2 1 2009
      STEVEN M. LARIMORE
      CLERK U.S. DIST. CT.
      S.D. OF FLA. MIAMI
```

## PETITION FOR AND NOTICE OF REMOVAL, RULE 81( c )

The Petition of SANTAM INSURANCE COMPANY LIMITED, for removal of this action

from the Eleventh Judicial Circuit Court, Miami-Dade County, Florida, Case No.:09-70636 CA 02,

to the United States District Court for the Southern District of Florida, Miami Division, respectfully

shows to this Honorable Court:

    1.    That Petitioner-Defendant SANTAM INSURANCE COMPANY LIMITED

("SANTAM") desires to exercise its rights under the provisions of Title 28 U.S.C. § 1441, et seq.,

and as provided under 28 U.S.C. § 1332, to remove this pending civil action from the Eleventh

Judicial Circuit Court, Miami-Dade County, Florida, styled BLUE WATER MARINE SERVICES,

INC., d/b/a TOWBOAT U.S. SOUTH DADE vs. ALL UNDERWRITERS SUBSCRIBING TO

*Blue Water Marine Services, Inc. v. All Underwriters, et al.*
*Defendant SANTAM's Petition for Removal*

COVER NOTE JY416008X, including SANTAM INSURANCE COMPANY LIMITED, and SAGICOR GENERAL INSURANCE (COMPANY) LTD., Case No. 09-70636 CA 02, asserting a claim for Salvage of the vessel M/Y NATALITA III, under the General Maritime Law of the United States. (Complaint, ¶ 1).

2.     Petitioner-Defendant SANTAM is one of two named Defendants in said civil action, as SANTAM is the 100% scheduled insurer on the Policy of Insurance subscribed to under Cover Note JY416008X, a copy of which is attached hereto as Exhibit 2; in addition to the other party, mis-named SAGICOR GENERAL INSURANCE (COMPANY) LTD., but whose actual name is SAGICOR GENERAL INSURANCE (CAYMAN) LTD., a Cayman Islands company. Plaintiff's Summons and Complaint is attached hereto as Exhibit 1, and constitutes all process and pleadings served upon Petitioner-Defendant in the above-styled action.

3.     The instant suit was filed in the Circuit Court in and for the Eleventh Judicial Circuit, on September 18, 2009, and which Complaint was furnished as a courtesy, along with copies of Summons dated September 25, 2009, to Defendant-Petitioner via facsimile to the undersigned law firm representing SANTAM, received October 1, 2009, from attorney for Plaintiff (Ex.1).

4.     The Court has original jurisdiction under 28 U.S.C. §1441 and 28 U.S.C. § 1333, for this suit claiming under the General Maritime Law of the United States, as to parties in diversity, under 28 U.S.C. § 1332.

5.     At the time of the filing of the Summons and Complaint herein, Petitioner was, and is, a corporation duly organized and existing under and by virtue of the laws of South Africa, with its principle place of business located in Braamfontein, South Africa, and its insured is a limited liability company organized and existing under the laws of the Cayman Islands.

*Blue Water Marine Services, Inc. v. All Underwriters, et al.*
*Defendant SANTAM's Petition for Removal*

6.      At the time of the service of the Summons and Complaint herein, co-defendant, mis-named SAGICOR GENERAL INSURANCE (COMPANY) LTD., whose proper name is SAGICOR GENERAL INSURANCE (CAYMAN) LTD., and who was and is a company duly organized under the laws of the Cayman Islands, BWI, with its principal place of business located in Grand Cayman.

7.      Plaintiff was and is a citizen and resident of Florida and was at all material times organized under the laws of Florida and doing business in Florida.

8.      The State Court action petitioned to be removed concerns and is related to Plaintiff's alleged salvage of the vessel *M/Y NATALITA III,* a 100' Azimut S.R.L. motor yacht, owned by Natalita III, Ltd., which business is incorporated under the laws of the Cayman Islands and located at Georgetown, Grand Cayman, Cayman Islands.

9.      The State Court suit is a civil action of which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332 and § 1333, and one that may be removed to this Court under the provisions of 28 U.S.C. § 1441(a), in that it is an action arising under the General Maritime laws of the United States, alleging causes of action governed by the General Maritime law of the United States, against Defendants, who are in complete diversity with Plaintiff.

10.     The grounds for removal are as follows:

    a.      There has been no Answer filed in the State Court action;

    b.      Co-Defendant SAGICOR is an insurer organized and existing under the laws of the Cayman Islands, with its principle place of business located in Grand Cayman, Cayman Islands, BWI;

    c.      Co-Defendant SAGICOR has not yet been served in this action;

    d.      The Plaintiff is a Florida corporation located in Dade County, Florida;

    e.      Defendant SANTAM is an insurer located in Braamfontein, South Africa;

*Blue Water Marine Services, Inc. v. All Underwriters, et al.*
*Defendant SANTAM's Petition for Removal*

f.    neither Defendant received a courtesy copy of the Summons and Complaint before October 1, 2009;

g.    The underlying policy of insurance for the vessel M/Y NATALITA III, subscribed to under Cover Note JY416008X, is effected 100% by the scheduled insurer SANTAM;

h.    The insured, Natalita III, Ltd., as a business incorporated under the laws of the Cayman Islands and located at Georgetown, Grand Cayman, Cayman Islands, BWI; and

i.    Plaintiff BLUE WATER MARINE SERVICES, INC. ("BLUE WATER") sues SANTAM and SAGICOR for recovery of salvage of the vessel under the International Convention of Salvage, and whose agreed hull value is alleged to be Three Million Dollars ($3,000,000.00), which if successful in its recovery of the claimed pure salvage award would be in an amount in excess of this Court's jurisdictional requirement, excluding attorney's fees and costs.

11.    Contemporaneous with the filing of this Notice of Removal and Petition for Removal, the Defendant is providing the Notice and Petition for Removal to the Plaintiff-Respondent through his attorneys of record in the State Court action and filing its Notice of Removal with the Clerk of the Eleventh Judicial Circuit of Florida as required by 28 U.S.C. § 1446(d).

12.    SANTAM INSURANCE COMPANY LIMITED files and presents herewith the sum of $350.00 dollars ($350.00) as required by law.

WHEREFORE, Petitioner prays that this Petition and sum be accepted and approved by this Honorable Court as good and sufficient, and that the aforesaid action now pending against it in the Eleventh Judicial Circuit Court of Florida, Miami-Dade County, be removed therefrom to the United States District Court for the Southern District Court of Florida, that this case proceed in this Court as a properly removed cause and that Petitioner may have such other, further and different relief as

*Blue Water Marine Services, Inc. v. All Underwriters, et al.*
*Defendant SANTAM's Petition for Removal*

to this Court may seem just and proper in the premises.

Dated this 21st day of October, 2009.
Miami, Florida

Respectfully submitted,
HAYDEN MILLIKEN & BOERINGER, P.A.
Attorneys for Santam Insurance Company, Ltd.

By:  *Pat Ley McMill Minx*

Reginald M. Hayden, Jr., Esq.
Florida Bar No.: 097106
Rhayden@hayden-milliken.com
Patricia Leigh McMillan Minoux, Esq.
Florida Bar No.: 624543
Lmcmillan@hayden-milliken.com
5915 Ponce De Leon Blvd., Suite 63
Miami, FL 33146
Telephone:    305-662-1523
Facsimile:    305-663-1358

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy hereof, accompanied by Notice of Removal, was mailed this October 21, 2009, to:

James W. Stroup, Esq.
STROUP & MARTIN, P.A.
119 SE 12th Street
Fort Lauderdale, FL 33316
T+ (954) 462-8808
F+ (954) 462-0278
E-mail: jstroup@strouplaw.com

By:  *Pat L. McMill Minx*

Patricia Leigh McMillan Minoux, Esq.
Florida Bar No.: 624543

H:\18372\removal state to federal\petitionforremoval.wpd

Page 5 of 5

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO.:   **09-70636 CA 02**

BLUE WATER MARINE SERVICES,
INC. d/b/a TOWBOATU.S. SOUTH
DADE, a Florida corporation,

      Plaintiff,

vs.

ALL UNDERWRITERS SUBSCRIBING
TO COVER NOTE JY416008X,
including SANTAM INSURANCE
COMPANY LIMITED, and SAGICOR
GENERAL INSURANCE (COMPANY)
LTD.,

      Defendants.

_____/

**THE ORIGINAL FILED**

**ON** SEP 25 2009

**IN THE OFFICE OF**
CIRCUIT COURT DADE CO.
CIVIL DIVISION

## COMPLAINT

Plaintiff, BLUE WATER MARINE SERVICES, INC. d/b/a TOWBOATU.S. SOUTH

DADE (hereinafter "BLUE WATER"), by and through its undersigned counsel, sues Defendants,

ALL UNDERWRITERS SUBSCRIBING TO COVER NOTE JY416008X, SANTAM

INSURANCE COMPANY LIMITED, (hereinafter "UNDERWRITERS"), believed to include

Defendant, SANTAM INSURANCE COMPANY LIMITED and/or SAGICOR GENERAL

INSURANCE (COMPANY) LTD., and alleges:

    1.    This is an action for a cause of action against the insurer(s) of the motor yacht *Natalita*

*III*, arising under this Court's general jurisdiction as it involves an action for more than Fifteen

Thousand ($15,000.00) exclusive of attorney's fees, costs and interests and is founded upon the

General Maritime Law of the United States as an independent cause of action grounded upon the

EXHIBIT
1

benefit accruing directly to the Defendants, as their interest may appear, by virtue of Plaintiff's salvage actions for their insured vessel.

2.      At all times material, Plaintiff BLUE WATER transacted business in the State of Florida's territorial waters off South Florida, including Biscayne National Park, by rendering emergency and non-emergency salvage and related assistance to vessels in distress.

3.      At all material times and upon information and belief, the vessel *Natalita III* was purchased in early 2008 by a non-U.S. citizen, NATALITA III LIMITED, a Cayman Islands corporation whose agent is Queens Gate Bank and Trust Grand Cayman, Cayman Islands.

4.      At all material times and upon information and belief, Defendant ALL UNDERWRITERS SUBSCRIBING TO COVER NOTE JY416008X, including SANTAM INSURANCE COMPANY LIMITED and/or Defendant SAGICOR GENERAL INSURANCE (COMPANY) LTD. issued a Marine Insurance Policy pursuant to Cover Note JY416008X, which insured the vessel *Natalita III* while she was physically located in the State of Florida for casualties in the State of Florida such as the maritime peril faced by the vessel when the vessel hit a reef and became grounded as set forth more fully below.

5.      Defendants UNDERWRITERS, and/or Defendant SAGICOR GENERAL INSURANCE (COMPANY) LTD. are subject to suit herein as the salvage assistance rendered inured directly to their benefit and mitigated substantial loss to the insured property with an agreed hull value of Three Million Dollars ($3,000,000.00) to wit: vessel *Natalita III*. *See Cresci v. M/Y Billfisher*, 874 F.2d 1550 (11th Cir. 1989)

6.      Defendants are subject to suit herein by reason of substantial contacts within the State of Florida and by virtue of the direct and immediate benefit it received as the hull insurers from the

-2-

salvage services rendered by Plaintiff in this State.

7.      Defendants, are subject to suit in the United States, and more particularly in the State of Florida, by their issuing an insurance policy covering the vessel *Natalita III* while she was located in Broward County, Florida.

8.      Upon information and belief, Defendant UNDERWRITERS, SANTAM and SAGICOR contracted to insurer property, or a risk located in the State of Florida at the time of contracting which subjects the Defendants to Florida's personal jurisdiction under Florida's Long Arm Statute. See, Florida Statutes §48.193(d).

9.      The Vessel struck a reef and put out a Mayday call which was received via VHF-16 by Plaintiff. The vessel reported hitting a reef and being in distress aground. The Vessel's coordinates placed the vessel within the waters of Biscayne National Park, on the oceanside of Old Rhodes Key. The Vessel was traveling southbound outside of Hawk Channel due to a navigation error that took the Vessel into the shallow, reef filled waters.

10.     Prior to reaching her final grounding location, the Vessel hit a patch reef and lost the use of both engines and the Vessel's propellers. Adrift without control, the *Natalita III* struck other reefs before swinging her stern into the oncoming seas and becoming hard grounded. The winds were gusting with seas breaking on the reef and the Vessel *Natalita III's* stern.

11.     The Vessel, *Natalita III's* propellers and running gear were dug into the reef and holding her stern into the wind while wave action caused the Vessel's hull to relentlessly pound the reef on which she was perilously stuck.

12.     *Natalita III's* hull fractured from the heaving pounding of the 162 gross ton Vessel's hull into the corals and reef framework.

-3-

13.    Plaintiff BLUE WATER responded to the distress call by providing immediate emergency salvage service to the vessel *Natalita III*.

14.    Plaintiff's immediate response to this perilous situation with necessary vessels, equipment and personnel to rescue the stranded Vessel is the basis for this claim.

15.    Plaintiff employed the equipment and personnel during its salvage of the Vessel.

16.    At the time of this incident, upon information and belief, the vessel was insured under an agreed value hull policy for Three Million Dollars and NO/100 ($3,000,000.00) and had a pre-salvage value of at least Three Million Dollars and NO/100 ($3,000,000.00).

17.    It is estimated that the Vessel's post salvage value is Two Million Seven Hundred Thousand Dollars and NO/100 ($2,700,000.00).

18.    The Vessel had, upon information and belief, at least Three Thousand (3,000) gallons of diesel fuel onboard which posed a substantial environmental risk to Biscayne National Park and the waters of the State of Florida for which Plaintiff is entitled to compensation under the International Convention of Salvage, 1989 a/k/a SALCON 90 and the general maritime law of the United States.

19.    The Vessel had a freshly painted bottom and the Vessel's bottom paint, fiberglass hull along with fuel, lead and other hazardous substances onboard and in the *Natalita III* posed a present danger of damage to corals and reef framework along with tissue toxicity to corals and other biota.

20.    The shallow depth, prevailing weather, that is, wind, current and seas presented substantial risk to the Vessel and her crew, as well as to the Plaintiff's salvage vessels, their equipment and crew.

21.    Absent a prompt, proficient response there was a substantial likelihood that the Vessel

-4-

would have been lost or likely sustained major saltwater submersion-related loss and damage by the failure of the Vessel's hull resulting from the pounding of her hull, propellers and struts into the ocean bottom, corals and reef framework.

22.     After reaching the insured Vessel while she was in peril, Plaintiff's personnel successfully removed the grounded Vessel, de-watered the vessel and made her ready for tow to Miami, Florida. Plaintiff successfully salvaged the vessel.

23.     By reason of the successful salvage of the Vessel, BLUE WATER is entitled to Judgment in excess of this Court's jurisdiction minimum as well as an award of attorney's fees, pursuant to 57.105, costs and pre-judgment interest, all of which is to be determined by this Court according to General Maritime Law and Florida law as applicable.

WHEREFORE, Plaintiff BLUE WATER prays for the following:

(1)     Upon proper notice and hearing, judgment be entered jointly and severally against ALL UNDERWRITERS SUBSCRIBING TO COVER NOTE JY416008X including SANTAM INSURANCE COMPANY LIMITED, and/or SAGICOR GENERAL INSURANCE (COMPANY) LTD., as their interest may appear, together with pre-judgment interest, cost and attorney's fees and demands trial by jury on all issues so triable, and for such other and further relief as this Court deems just and proper.

DATED: September 17, 2009.

> STROUP & MARTIN, P.A.
> Attorneys for Plaintiff
> 119 Southeast 12th Street
> Fort Lauderdale, Florida 33316
> (954) 462-8808; fax 462-0278
>
> By: _____
>      JAMES W. STROUP
>      Fla Bar No. 0842117



# BESSO LIMITED

Aon Re Canada
150 King Street West
Suite 1900
Toronto
Ontario, Canada M5H 1J9

Date:       20th March 2008

Risk No:    JY416008X
*(Please quote above number in all correspondence)*
Ref:        QB/CLR

## COVER NOTE

In accordance with your instructions we have effected the following reinsurance on your behalf.
This Insurance Cover Note has been prepared on your behalf by Besso Limited. It is not the insurer's
contract document.

| | |
|---|---|
| **TYPE:** | Hull and Machinery |
| **ASSURED:** | Natalita III Limited / Andreas O. Ugland<br>P.O.Box 30464<br>George Town<br>Grand Cayman<br>Cayman Islands |
| **REINSURED:** | Sagicor General Insurance (Cayman) Ltd |
| **VESSEL:** | **"NATALITA III" 1996 100' Azimut Jumbo** |
| **PERIOD:** | From 14th March 2008 to 13th March 2009, Local Standard Time, both days inclusive |

**INTEREST:**
- A)  Hull and Materials, Engines and Machinery and everything connected therewith, nothing excluded.
- B)  Protection and Indemnity Risks
- C)  Medical Payments
- D)  Uninsured Boaters Coverage

**SUM INSURED:**
- A)  Valued USD 3,000,000
- B)  USD 1,000,000 combined single limit for property damage and personal injury  each and every accident
- C)  USD 5,000 each and every person each and every accident.
- D)  USD 100,000 each and every accident.

Continued/...

MARINE DIVISION
BESSO LIMITED
A SUBSIDIARY OF BESSO HOLDINGS LIMITED
8-11 CRESCENT, LONDON EC3N 2LY
TELEPHONE: 020 7480 1000, FACSIMILE: 020 7480 1272
WEBSITE: www.besso.co.uk
AUTHORISED AND REGULATED BY THE FINANCIAL SERVICES AUTHORITY FSA FIRM REFERENCE NO 309150
REGISTERED IN ENGLAND NUMBER 00010080

Broker at LLOYDS

**EXHIBIT**
2



Attaching to and forming part of Cover Note No. JY416008X

Page Two/...

TRADING:    Caribbean Sea and South East USA (Including Mexico and Cuba)

Navigation Limitations for Hull War, Strikes, Terrorism and Related Perils Endorsement (JW2005 / 001A)

CONDITIONS:    SSIB Yacht Wording
Institute Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons Exclusion Clause CL.370 (10.11.03).
Institute Cyber Attack Exclusion Clause CL.380 (10.11.03).
IYC Machinery Damage Extension Clause (1.11.85) Cl.332
IYC War and Strikes Clauses Yachts (1.11.85) Cl.329
IYC Personal Effect Clause (1.11.85) Cl.331
Cancelling returns only.

DEDUCTIBLE:    Underwriters hereon only to be liable for the excess of:-

| | | |
|---|---|---|
| Hull and Machinery etc | USD 60,00 | ) each and every |
| Lightning | USD 90,000 | ) claim including Total |
| Named Windstorm | USD 150,000 | ) Loss |
| | | |
| Protection and | USD 2,000 | ) each section each |
| Indemnity Risks and | | ) and every claim |
| Running Down Clause | | ) |
| | | |
| Medical Payments | USD 100 | ) each and every |
| | | ) claim |
| | | |
| Uninsured Boater | USD 1,000 | ) each and every |
| Coverage | | ) claim |

Where there is an accident or occurrence which involves more than one deductible then the largest single deductible shall apply.

EXPRESS
WARRANTIES:    None

SUBJECTIVITIES:    **Subject** to satisfactory proposal form
**Subject** to satisfactory windstorm plan
**Subject** to current survey report

SEVERAL
LIABILITY:    LSW 1001 (Insurance) - Several Liability Notice
The subscribing Insurers' obligations under contracts of Insurance to which they subscribe are   several and not joint and are limited solely to the extent of  their individual subscriptions. The subscribing Insurers are not responsible for the subscription of any co-subscribing Insurer who for any reason does not satisfy all or part of its obligations.

Continued/...



Attaching to and forming part of Cover Note No. JY416008X

Page Three/...

| | |
|---|---|
| LAW AND JURISDICTION: | This insurance shall be governed by and construed in accordance with the law of the state of New York and each party agrees to submit to the exclusive jurisdiction of the courts of USA<br>Agreed practice of US average adjustors to apply.<br>Institute Service of Suit Clause (U.S.A) Cl.355 dated 1/11/92 |

PREMIUM/RATE:   USD 29,008

PAYMENT TERMS:  LSW 3000 – Premium Payment Clause (60 Days)

| | |
|---|---|
| RECORDING, TRANSMITTING AND STORING INFORMATION: | Where Oamps Special Risks Limited maintains risk and claim data, information and documents, they may hold such data, information and documents electronically |
| INFORMATION: | Clean Loss Record<br>Engines: 1996 MTU 1850HP X 2<br>MDS: 24 Knots<br>Flag: USA<br>Moored: Lalique Point, Crystal Harbour, Grand Cayman |

EFFECTED WITH:   100% Insurance Company as per schedule of Insurers herein

SCHEDULE OF INSURERS:

100.0000%   Santam per OAMPS Special Risk
-------------
100.0000%   Of Order Hereon
=========

Please examine this document carefully and return it immediately if it is not in accordance with your instructions.

_C. A. Mean_

Authorised Signatory
**BESSO LIMITED.**

Authorised Signatory
**BESSO LIMITED**

Continued/...

Attaching to and forming part of Cover Note No. JY416008X

Page Four/...

**REMINDER:**     **It is understood that you have provided complete and accurate information to insurers and that you have complied with your legal duty to disclose, before inception of the insurance contract, all material matters relating to the risk (i.e. all information which would influence the judgment of a prudent insurer in determining whether to underwrite the risk and if so upon what terms and at what premium). If all such information has not been disclosed, insurers have the right to avoid the contract from its commencement that may lead to claims not being met. If you believe that you may not have complied with this duty, you should contact us immediately.**

**The assured must comply with any warranty, subjectivity and/or condition contained within this insurance (whether express or implied). Failure to do so may discharge underwriters from all liability.**



## PREMIUM PAYMENT CLAUSE

The (Re)Insured undertakes that premium will be paid in full to Underwriters within 60 days of inception of this policy (or, in respect of instalment premiums, when due).

If the premium due under this policy has not been so paid to Underwriters by the 60 days from the inception of this policy (and, in respect of instalment premiums, by the date they are due) Underwriters shall have the right to cancel this policy by notifying the (Re)Insured via the broker in writing. In the event of cancellation, premium is due to Underwriters on a pro rata basis for the period that Underwriters are on risk but the full policy premium shall be payable to Underwriters in the event of a loss or occurrence prior to the date of termination which gives rise to a valid claim under this policy.

It is agreed that Underwriters shall give not less than 15 days prior notice of cancellation to the (Re)Insured via the broker. If the premium due is paid in full to Underwriters before the notice period expires, notice of cancellation shall automatically be revoked. If not, the policy shall automatically terminate at the end of the notice period.

Unless otherwise agreed, the Leading Underwriter (and Agreement Parties if appropriate) are authorised to exercise rights under this clause on their own behalf and on behalf of all Underwriters participating in this contract.

If any provision of this clause is found by any court or administrative body of competent jurisdiction to be invalid or unenforceable, such invalidity or unenforceability will not effect the other provisions of this clause which will remain in full force and effect.

Where the premium is to be paid through a London Market Bureau, payment to Underwriters will be deemed to occur on the day of delivery of a premium advice note to the Bureau.

11/01
LSW3000



## PAYMENT OF PREMIUM AND CANCELLING CLAUSE

It is hereby understood and agreed that notwithstanding anything to the contrary contained herein or any custom, usage or statutory provision to the contrary, nothing in this policy shall be construed as an acknowledgement that premium has been received by the Underwriters hereto.

The premium is to be paid through Oamps Insurance Brokers Limited ("Brokers") and is due to them on the attachment date of this insurance or in the case of instalments of premium, on such later dates as may be shown in the debit note or policy. In the event of the non-payment of any or all of the premium to Oamps Insurance Brokers Limited, when due, this Policy may be cancelled by Underwriters for that part of the insurance to which the outstanding premiums refer, at any time thereafter by giving at least 15 working days written notice to the Assured before such cancellation takes effect. This policy shall then terminate at Noon on the day stated in such notice, provided the default has not been made good in the meantime. A written, telegraphic, facsimile or email notice sent to the Assured or their agents at their last known address shall constitute a complete notice to the Assured.

If the premium due hereon is payable in instalments then in the event of a vessel being an Actual Total Loss and/or Constructive Total Loss and/or Arranged Total Loss and/or Compromised Total Loss covered hereunder during the currency of this policy, the full annual premium is to be paid to underwriters.

This clause shall not prejudice or affect the Broker's right in respect of any amount remaining due to them whether in connection with this Policy or otherwise or any other rights of the Brokers against the Assured or their agents.

For reinsurances the word "insurance" shall be deemed to read "reinsurance", Underwriters" deemed to read "reinsurers" and "Assured" deemed to read "Reinsured".



### FROST DAMAGE CLAUSE

It is hereby agreed that this insurance is extended to cover all loss or damage to craft and/or equipment and/or machinery caused by frost subject to all due and reasonable precautions being taken.

### CLOTHING CLAUSE

Underwriters will pay for loss or damage to crew's clothes provided by the Owner, binoculars, sextants, nautical books, oilskins, sea boots and yachting clothes being the personal property of the Assured and/or the Assured's family caused by the Insured vessel being stranded, sunk, burnt or in collision, up to, unless otherwise specifically mentioned, a sum equivalent to 5% of the insured value of the vessel in respect of any one accident. Provided that Underwriters liability shall not in the event of an actual or constructive total loss exceed their proportion of the insured values of the insured property.



# "ALL RISKS" YACHT INSURANCE A 001/03

**1.1** *Section - All Risks*

Subject to the terms of the attached certificate this insurance is against All Risks of physical loss or damage to the Vessel caused by any accidental fortuitous cause including latent defect or by the negligent or malicious act of any person, or by theft, or by the act of any governmental authority done for the purpose of preventing or mitigating pollution or risk of pollution resulting from loss or damage to the Vessel if such loss or damage is covered by this insurance.

*1.1.1* The term "the Vessel" includes the Vessel named in the Schedule, her gear and equipment, (other than moorings) boat or tender and bunkers, being the property of the Assured and such as would be transferred upon sale.

**1.2** *Salvage*

The Insurers will pay the reasonable cost of the salvage of the Vessel following any casualty provided that the Assured shall not without the consent of the Insurers make any admission of liability for salvage nor agree any salvage award with any salvor or alleged salvor. Limited to 10% of value of vessel.

*1.2.1* Nothing shall be payable under the insurance in respect of any salvage by any sister ship, or ship under the same or associated management or control, or by any person or company connected with the Assured or with any company with which he is associated.

**1.3** *Wreck Removal and Disposal*

The insurers will pay the reasonable cost of removing the wreck of the Vessel from any place in South African Territorial Waters from which the Assured is required by the order of any competent authority to remove it, and will in addition pay the reasonable cost of disposing of the wreck. Limited to 10% of value of vessel.

**1.4** *Inspecting Bottom After Grounding*

The Insurers will pay the reasonable cost of inspecting the bottom of the Vessel after a grounding, if reasonably incurred specially for that purpose, even if no damage be found. Limited to 10% of value of vessel.

**1.5** *Inland Transit*

The Insurers will pay for any loss or damage caused as set out in clause 1.1 above while the Vessel (or part thereof as defined in Clause 1.1.1) is in transit by road, rail, car-ferry or air, including loading and unloading from the conveyance, on journeys starting and finishing on land adjacent to the Navigation Limits in accordance with the certificate, but no claim shall be allowed in respect of scratching, bruising and/or denting arising during transit covered by this clause and the cost of consequent repainting or revarnishing, or in respect of liability to third parties howsoever arising.

**1.6** *Duty of Assured*

*1.6.1* In the case of any loss or misfortune it is the duty of the Assured and their servants and agents to take such measures as may be reasonable for the purpose of averting or minimising a loss which would be recoverable under this insurance.

*1.6.2* Subject to the provisions below and to the other terms of this insurance, the Insurers will contribute to charges properly and reasonably incurred by the Assured their servants or agents for such measures. General average salvage charges, collision defence or attack costs and costs incurred by the Assured in contesting liability covered by clause 3.3 are not recoverable under this clause.

*1.6.3* The Assured shall render to the Insurers all possible aid in obtaining information and evidence should the Insurers desire to take proceedings at their own expense and for their own benefit in the name of the Assured to recover compensation or to secure an indemnity from any third party in respect of anything covered by this insurance.

*1.6.4* Measures taken by the Assured or the Insurers with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

*1.6.5* The sum recoverable under this clause shall be in addition to the loss otherwise recoverable under this insurance but in no circumstances shall amounts recoverable under clause 1.6.2. exceed the sum insured under this insurance in respect of the Vessel.

## 1.7    *Exceptions*

This section 1 of this policy does not cover:

*1.7.1.* any loss or damage caused by the failure of the Assured to exercise due diligence properly to manage the Vessel or to maintain her in a seaworthy condition.

*1.7.2.* any loss or damage caused by the malicious act of the Assured, their Servants, Agents, any member or the Assureds' family, or any person on board the Vessel with the consent of the Assured.

*1.7.3.* any loss or damage caused by wear, tear or deterioration.

1.7.4 All claims submitted under this policy in respect of latent defects are subject to an additional deductible of 10% of claim cost, minimum R 2 500, over and above the standard deductible mentioned in the policy schedule.

*1.7.5.* the theft of the Vessel by any person having control of the Vessel with the consent of the Assured.

*1.7.6.* the theft of any outboard motor unless at the time of the theft it was either secured to the Vessel by some locked means other than its operating mounting, or it was inside a locked cabin, storage compartment, conveying vehicle or building to which access was forcibly effected.

*1.7.7.* the theft of any of the Vessel's gear or equipment unless resulting from forcible entry into a locked cabin, storage compartment or building. This Clause shall not apply to items of equipment which are permanently fixed to the Vessel provided that the Assured demonstrates forcible removal.

*1.7.8.* the loss of any of the Vessels' equipment whilst in transit unless resulting from the theft following forcible entry into the conveying vehicle.

*1.7.9.* the theft of any boat or tender to the Vessel unless permanently marked with the name of the Vessel.

*1.7.10.* the deductible set out in the certificate in respect of each and every loss, "Loss" meaning any loss or series of losses arising out of any one event or series of events resulting from any one cause.

*1.7.11.* loss of or damage to protective covers or to sails split by the wind or blown away while set, unless consequent on damage to the spars on which sails are bent, or occasioned by the Vessel being stranded or in collision with any external substance (ice included) other than water.

*1.7.12* loss of or damage to sails, masts spars or standing and running rigging while the Vessel is racing unless the loss or damage is caused by the Vessel being stranded, sunk, burnt, on fire or in collision or contact with any external substance (ice included) other than water.

PROVIDED THAT if specially agreed by Insurers, this exception may be deleted, and this insurance will cover:

*1.7.12.1.* the cost of replacing or repairing sails, masts, spars, standing and running rigging lost or damaged whilst the Vessel hereby insured is racing, to the extent only 2/3rds of such cost (without application of the Deductible in this insurance).

*1.7.12.2* the Insurers' liability under Clause 1.7.12.1 above arising out of any one

occurrence whilst racing shall be calculated upon the basis that the full replacement cost of all sails carried whether set or not, masts, spars, standing and running rigging shall not exceed the sum stated for this purpose in the certificate. If the replacement cost exceeds the sum stated, the assured shall be deemed to be his own Insurer in respect of the uninsured balance.

*1.7.13*   loss of or damage to any mooring or any part thereof.

### 1.8   War

Subject always to the exclusions hereinafter referred to, this section 1.8 of this Insurance covers:

*1.8.1   Loss of or damage to the Vessel caused by:*

*1.8.1.1.* war, civil war, revolution, rebellion, insurrection or civil strife arising there from, or any hostile act by or against a belligerent powder.

*1.8.1.2.* capture, seizure, arrest, restraint or detainment, and the consequences thereof or any attempt thereat.

*1.8.1.3.* derelict mines, torpedoes, bombs or other derelict weapons of war.

*1.8.1.4.* strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions.

*1.8.1.5.* any terrorist or any person acting from a political motive.

*1.8.1.6.* confiscation or expropriation.

Subject to an Additional Premium of 0.05%.

*1.8.2.   Detainment*

In the event that the Vessel shall have been the subject of capture, seizure, arrest, restraint, detainment, confiscation or expropriation, and the Assured shall thereby have lost the free use arid disposal of the Vessel for a continuous period of 12 months, then for the purpose of ascertaining whether the Vessel is a constructive total loss the Assured shall be deemed to have been deprived of the possession of the Vessel without any likelihood of recovery.

*1.8.3.   Exclusions*

This Section 1.8 of this insurance excludes:

*1.8.3.1.* Loss, damage, liability or expense arising from:

*1.8.3.1.1.* any detonation of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter, hereinafter called a nuclear weapon of war.

*1.8.3.1.2.* the outbreak of war (whether there be a declaration of war or not) between any of the following countries:

United Kingdom, United States of America, France, the Commonwealth of Independent States, the People's Republic of China.

*1.8.3.1.3.* Requisition or pre-emption.

*1.8.3.1.4.* capture, seizure, arrest, restraint, detainment, confiscation or expropriation by or under the order of the government or any public or local authority of the country in which the Vessel is owned or registered.

*1.8.3.1.5.*   arrest, restraint, detainment, confiscation or expropriation under quarantine regulations or by reason of infringement of any customs or trading regulations.

*1.8.3.1.6*   the operation of ordinary judicial process, failure to provide security or to pay any fine or penalty or any financial cause.

*1.8.3.1.7.*   any claim for expenses arising from delay.

*1.8.4. Termination*

*1.8.4.1.* This Section 1.8 of this insurance may be cancelled by either the Insurers or the Assured giving 7 days' notice (such cancellation becoming effective on the expiry of 7 days from midnight of the day on which notice of cancellation is issued by or to the Insurers). The Insurers agree, however, to reinstate this insurance subject to agreement between the Insurers and the Assured prior to the expiry of such notice of cancellation as to new rate of premium and/or conditions and/or warranties.

*1.8.4.2.* Whether or not such notice of cancellation has been given this insurance shall TERMINATE AUTOMATICALLY:

*1.8.4.2.1*   upon the occurrence of any hostile detonation of any nuclear weapon of war as defined in clause 1.8.3.1.1. wheresoever or whensoever such detonation may occur and whether or not the Vessel may be involved.

*1.8.4.2.2.*   upon the outbreak of war (whether there be a declaration of war or not) between any of the following countries:

United Kingdom, United States of America, France, the Commonwealth of Independent States, the People's Republic of China.

*1.8.4.2.3.*   In the event of the vessel being requisitioned, either for title or use.

*1.8.4.3.* In the event either of cancellation by notice or of automatic termination of this insurance by reason of the operation of this clause, or of the sale of the Vessel, pro rata net return of premium shall be payable to the Assured.

*1.9*   Loss or damage to motors and connections unless caused by:

Fire or explosion

Sinking, stranding or colliding with any substance other than water

The vessel being immersed as a result of heavy weather

*1.10*   In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from:-

1.10.1   ionising radiations from or contamination by radioactivity from nuclear fuel or from nuclear waste or from combustion of nuclear fuel.

1.10.2   the radioactive, toxic, explosive or other hazardous or contamination properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof.

*1.11.1.*   any weapon of war employing atomic fission and/or fusion or other like reaction or radioactive force or matter

This clause is paramount and shall override anything contained in this insurance inconsistent therewith.

*Section 2 —Speedboats*



2.1   A speedboat is

    (a)  any Vessel whose designed or actual maximum speed exceeds 17 knots  up to a maximum of 35 knots or

    (b)  a boat or tender whose designed or actual maximum speed exceeds 17 knots even if the designed or actual maximum speed of the Vessel to which it is a boat or tender does not exceed 17 knots.

2.2   It is warranted that when a speedboat is under way a competent person shall be on board and in control.

2.3   This part of this insurance does not cover any claim for loss or damage to the speedboat or any liability to any third party or for any salvage services:

    *2.3.1.*    arising while the speedboat is participating in racing or speed tests or any trials in connection therewith.

    *2.3.2.*    resulting from any outboard motor becoming detached from the speedboat or being dropped overboard if the Horse power of the engine as rated by the manufacturer exceeds 65 H.P.

    *2.3.3.*    resulting from the speedboat with the knowledge of the Assured being under the control of any person for the time being under the influence of alcohol or drugs.

    *2.3.4.*    resulting from fire or explosion on board any speedboat having an engine room, or engine space unless such engine room or engine space is equipped with a fire extinguishing system automatically operated or having controls at the steering position or outside and adjacent to the engine room or engine space and properly installed and maintained in efficient working order

    *2.3.5.*    in respect of rudder, strut, shaft, propeller, outboard unit or outdrive unit unless caused by contact with another vessel, pier  or jetty, or unless the speedboat be sunk or immersed other circumstances excluded by  clause 2.3.6.

    *2.3.6.*    caused by or arising from the speedboat being stranded, sunk, swamped, immersed or breaking adrift while left moored or anchored unattended off an exposed beach or shore.

### *Section 3 - Third Party Liability*
**Insured Event**
**3.1**

    By reason of your interest in the vessel you may be held legally liable for damage, loss of life or injury and this section of your policy indemnifies you for such payment as defined below.

    This section also covers the legal liability of any person (other than a person operating or employed by the operator of a shipyard, repair yard, slipway, yacht club, marina, sales agency or similar organisation) using the vessel with your permission.

    The limit of indemnity under this section is as shown in the schedule for any one accident or series of accidents arising from the same event. In no case shall the total indemnity exceed the amount shown in the schedule in respect of any one event.

    We shall indemnify you or any person using the vessel with your permission or any water skier being towed or preparing to be towed by your vessel against claims resulting from your or their legal liability for:-

    3.1.1.    Death of or bodily injury to any person other than you or other than as specified in exclusions 3.2.1. to 3.2.7.

    3.1.2.    Loss of or damage to property not belonging to you or the permitted user

    3.1.3.    Attempted or actual raising, removal or destruction of the wreck of the vessel or any neglect or failure to raise, remove or destroy the wreck

    3.1.4.    Expenses incurred by you with our prior written consent in connection with official enquiries and coroners inquests.



3.1.5.  Law costs, incurred with our prior written consent in defending any action or contesting liability whether or not such action proceeds in the criminal or civil court.

### 3.2.  *Exclusions*

We shall not indemnify you or the permitted user or water skier against claims resulting from legal liability for:-

3.2.1.  Death or bodily injury in respect of any person employed in any capacity by you in connection with the vessel or similarly employed by any person using the vessel with your permission or similarly employed by any water skier.

3.2.2.  Accidents arising from any person engaged in kiting or other airborne sport whilst being towed by your vessel or preparing to be towed or until safely back on board your vessel.

3.2.3.  Accidents arising while the vessel is in transit by mechanically propelled road vehicle, rail, ship or aircraft.

3.2.4.  Accidents involving a trailer except when intentionally not coupled to a towing vehicle.

3.2.5.  Death or bodily injury in respect of fare-paying passengers and loss of or damage to their property.

3.2.6.  Damages or penalties arising under contract.

3.2.7.  Fines or other penalties imposed under any statutory code or common law in respect of any offence committed.

*3.3* On the happening of any event which might give rise to a claim under this section, the Assured or any Assured Person shall immediately give notice to Santam Insurance Company Limited, via Steve Slatter Insurance Brokers (Pty) Ltd., 17 Lynn Avenue, Glenashley, Durban, South Africa, 4051

### *Section 4 - General Conditions Applicable to all Sections of this Policy*

### 4.1  *Proposal Form*
The proposal form completed by or on behalf of the Assured shall be the basis of this contract of insurance. If anything stated in the proposal form is materially untrue, or if any material information has been omitted, then at the option of the Insurers this insurance may be cancelled and avoided from its inception.

### 4.2  *Limits of Navigation and Use*
4.2.1.  The Vessel is covered while anchored, moored or navigating within the Navigation limits set out in the Certificate annexed, including while aground at customary berth, at place of storage ashore, including lifting out and launching, while being moved in shipyard or marina, while being dismantled, fitted out, refitted, overhauled, undergoing normal maintenance or survey, but not while being used as a houseboat or undergoing major repair or alteration. Gear and equipment are covered whether on board the Vessel or not, while in transit to and from place of storage ashore, and while in storage ashore, always subject to the terms and conditions of this insurance.

4.2.2.  It is warranted that the Vessel at all times be used only for the private pleasure purposes of the Owner.

4.2.3.  If specially agreed by the Insurers, and in consideration of the payment of an additional premium if required, this insurance is extended so as to afford cover while the Vessel is in use in consideration of payment hire or reward. In particular, clauses 3.2.5 and 4.2.2. are

A001/01                                                                 Page 6 of 8



deemed deleted, but clause 4.2.4. and all other terms remain in force.

4.2.4.   When cover is extended under clause 4.2.3. it is warranted that the Vessel shall be under the supervision of a sufficiently qualified person, and that while under way she shall be under the command of a competent person.

4.2.5.   It is warranted that unless the Vessel is manned by at least two persons of adequate physical strength, one of whom shall be competent to be in command, she shall not be navigated except between the hours of sunrise and sunset local time for a cumulative distance not exceeding 50 nautical miles on any one day.

4.2.6.   It is warranted that the Vessel will be used for lawful purposes and in so far as the Insured their Servants and Agents can control the matter the Vessel will be operated in a lawful manner.

**4.3    Other insurances**

*If items covered under this policy are more specifically insured by any other insurance, we will not pay more than our rateable portion of any los, damage or liability.*

**4.4    Change of Ownership**
Subject to clause 4.4. this insurance shall automatically cease on the ownership of the Vessel changing. If the Vessel is owned by a body corporate, a change in control of the body corporate shall be deemed to be a change of ownership.

**4.5    Continuation of Insurance**
If the Vessel is at sea when this insurance expires, it shall automatically continue until the Vessel arrives safely at her next port of call, provided that prompt notice is given to the Insurers and any additional premium required is paid.

**4.6    Due Diligence**
The Assured shall at all times exercise due diligence to maintain the Vessel in a seaworthy condition, to see that she is properly fitted with all prudent safety equipment which shall be maintained in working order, and that when unattended she is properly moored and her accommodation and storage compartments are secured and locked, and to prevent pollution or the risk of pollution following damage to the vessel.

**4.7    New For Old**
In respect of any claim for replacement of sails, protective covers, standing or running rigging, or outboard motors, there may be deducted such sum not exceeding one third of the claim as in the opinion of the Insurers shall represent the advantage to the Assured in receiving a new item in replacement for any old item.

**4.8    Unrepaired Damage**
In no case shall the Insurers be liable for unrepaired damage in the event of a subsequent total loss (Whether or not covered under this insurance) sustained during the period covered by this insurance or any extension thereof.

**4. 9    Constructive Total Loss**

4.9.1.   In ascertaining whether the Vessel is a constructive total loss, the insured value shall be taken as the repaired value and nothing in respect of the damaged or break-up value of the Vessel or wreck shall be taken into account.

4.9.2.   No claim for constructive total loss based upon the cost of recovery and/or repair of the Vessel shall be recoverable hereunder unless such cost would exceed the insured value. In making this determination, only the cost relating to a single accident or sequence of damages arising   from the same accident shall be taken into account.



**4.10   *Claims Procedure***
4.10.1.   On the happening of any event which may give rise to a claim on this policy, the Assured must immediately give notice to Santam Insurance Company Limited. In the event of theft or malicious damage, the Assured should also notify the local police.

4.10.2.   The Assured must take all reasonable steps to minimise loss and damage to the Vessel or to its contents if insured, and to minimise liabilities to third parties. Attention is drawn to clause 1.6. "Duty of Assured" and to clause 3.5. "No Admission".

4.10.3.   If the Assured shall make any claim knowing it to be false or fraudulent then this policy shall be void from its inception and the insurers shall be entitled to retain any premium paid.

**4.11   *Cancellation and Return Premium***
In the event of the sale of the Insured Vessel a return premium payment shall be made from the date of sale, notice of such sale must be given to Insurers within a reasonable time. The refund of premium for cancellation other than in this circumstance shall be at the discretion of the Insurer.

**4.12   *Notices, Law and Jurisdiction***
Any notices required by this policy to be given by the Insurers to the Assured may be given to the Assured by letter posted to him at the address stated in the Certificate. Any notices required by this policy to be given by the Assured to the Insurers may be given to the Insurers by delivery to them of such notice to Santam Insurance Company Limited at P O Box 66, Durban 4000, or 17th Floor, Old Mutual Building, 303 West Street, Durban 4001.

**4.15**   Unless otherwise agreed with you prior to commencement of cover this insurance is subject to South African Jurisdiction.

**4.16**   Unless otherwise agreed with you prior to commencement of cover any dispute arising under or in connection with this policy of insurance shall be subject to the exclusive jurisdiction of the South African Supreme Court

**5.0   *Fraud Clause;***

If any claim under this policy is in respect fraudulent of wilful or deliberate acts have been used by the insured , or anyone acting on the insured's behalf or in collusion with the insured to obtain any benefit under this policy then all benefits under this policy will be forfeited.

ºJS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

**CIV-MOORE**

**09-23182**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Blue Water Marine Services, Inc., d/b/a Towboat U.S. South Dade, | All Underwriters sub. to cover note JY416008X, including Santam Insurance Co., Ltd., and Sagicor Gen. Ins. (Co.), Ltd. |

**(b)** County of Residence of First Listed Plaintiff  Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

FILED by ___ D.C.
OCT 21 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
James W. Stroup, Esq.
STROUP & MARTIN, P.A.
119 SE 12th St., Ft. Lauderdale, FL 33316

**MAGISTRATE JUDGE SIMONTON**

Attorneys (If Known)
Reginald M. Hayden, Jr., Esq., Hayden Milliken & Boeringer, P.A.
5915 Ponce de Leon Blvd., Ste. 63, Miami, FL 33146

09-CV-23182- Moore /Simonton

**(d) Check County Where Action Arose:** ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 2  U.S. Government Defendant
☐ 3  Federal Question (U.S. Government Not a Party)
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☑ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | **PERSONAL PROPERTY** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 370 Other Fraud | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 371 Truth in Lending | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 380 Other Personal Property Damage | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 385 Property Damage Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 465 Other Immigration Actions | | |
| ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 442 Employment | **Habeas Corpus:** | | | |
| ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☑ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S)

(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO

JUDGE ___     DOCKET NUMBER ___

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC section 1332, via 28 USC section 1441; claim for salvage under general maritime law.

LENGTH OF TRIAL via  3-5  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ ___

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
October 21, 2009

FOR OFFICE USE ONLY
AMOUNT $350     RECEIPT # 10105 14
10/21/09